## CHARLES BROWN, Appellant, *versus* MARY M. THORNDIKE.

*It seems,* that where the words of a will not duly attested to pass real estate, are equivocal, leaving it doubtful whether the testator intended to give real or personal estate or both, courts of probate may and must admit evidence *aliunde,* and must inquire into the nature and circumstances of the testator's property, with a view to the question whether the will shall or shall not be approved and allowed.

But whether, on a question of probate, where the will, on the face of it, professes in terms to give real as well as personal estate, evidence *aliunde* is admissible to show that the testator had no real estate at the time of making his will, *quære.*

By *St.* 1783, *c.* 24, a will purporting to dispose of real and personal estate but not duly attested to pass real estate, shall not be approved and allowed for the personal estate. Whether this provision is applicable to a writing intended as a total revocation of a will of real and personal estate, but which writing is not duly attested to operate on the real estate, *quære.*

If a testator devises both real and personal estate, by a will duly attested, and by an alienation of the real estate revokes the will *pro tanto,* the will then stands as a will of personal estate only, and is revocable accordingly by any writing sufficient to revoke a will of personal estate.

In such case, evidence extrinsic to the will is necessarily admissible, upon the question of probate, to show such alienation of the real estate, whereby the will has become a will of personal estate only and revocable as such.

A testator wrote on his will, "It is my intention at some future time to alter the tenor of the above will; or rather to make another will; therefore be it known, if I should die before another will is made, I desire that the foregoing be considered as revoked and of no effect." *Held,* that this was a present revocation and not the declaration of an intent to revoke by some future act.

THIS was an appeal from the decree of the judge of probate, passed on March 11, 1833, disallowing a certain instrument offered for probate as the last will and testament of Charles Thorndike. The appellant was the guardian of three of the testator's children; the appellee was the testator's widow.

One of the reasons of appeal was, because the instrument purports, as the last will and testament of Charles Thorndike, to dispose of both his real and personal estate, and was duly signed, sealed and published as and for his last will and testament, in the presence of three credible witnesses, who in his presence &c. subscribed their names thereto as witnesses, and these witnesses testified thereto before the judge, yet the judge refused to approve and allow the instrument as and for the last will and testament of Charles Thorndike, because o'

a certain writing purporting to be signed by Charles Thorn-
dike, but not signed by him in the presence of three or more
witnesses, as the statute requires, which the judge considered
and decreed to be a revocation of the instrument offered for
probate.

In the opinion of the Court, drawn up by the chief justice,
the facts upon which the decision was founded were stated as
follows : —

Charles Thorndike, the testator, made his will, duly exe-
cuted to pass real estate, that is, attested by three witnesses,
on the 28th of February, 1825, not then having any child
born. His first child was born July 4th, 1825, and after-
wards, three others, and one posthumous child, were born,
making five in all, four of whom still survive.

The will, after several small legacies, proceeds thus :
" Item, all the residue of my estate, real and personal &c. I
give and bequeath" &c. to a trustee.

The will also makes provision, by property in trust, for
defraying the necessary and proper expenses of the support
and education of any child or children, the testator might
leave at his decease.

The only reference to real estate in the will, is in regard
to the execution of certain trusts, in which he directs the
trustee as follows ; " and further, that he shall not, without
the free consent of my said wife Mary M. dispose of the
estate situate in Caroline county in the State of Maryland, and
consisting of land and negro slaves, of which I became pos-
sessed upon my marriage with said Mary M., but shall take
care, for the purposes of the trusts aforesaid, to have the said
estate so improved as to be productive, and for this purpose
shall consult with my said wife, and her brother the said
Frederic Purnell, in regard to the improvement of the same."

It was further proved to the satisfaction of the Court, if it
was competent to prove the same by evidence *aliunde*, and as
far as it is competent to prove a negative, that Charles
Thorndike had no other real estate, at the time the will was
executed, nor at any time afterwards, before the date of the
instrument of revocation. It was also proved by satisfactory
evidence, if it was competent upon this appeal to produce

33 *

evidence to that effect, that after the execution of the will, and before the date of the instrument of revocation, Charles Thorndike, by deed duly executed to pass real estate in Maryland, conveyed away and alienated, all his right, title and interest in the estate in Maryland, referred to in the will.

It further appears, that on the same will, and immediately under the attestation, the following words were written and signed by the testator, at the time that the same bears date. " Boston, Mass. June 25, 1829. It is my intention at some future time to alter the tenor of the above will ; or rather to make another will ; therefore be it known, if I should die before another will is made, I desire that the foregoing be considered as revoked and of no effect. C. Thorndike."

It further appears, that about the 8th day of May, 1832, Israel Thorndike, father of the testator, died, by which Charles Thorndike obtained a large accession of real and personal property, amounting to about 350,000 dollars ; and that his property before that event, did not exceed about 25,000 or 30,000 dollars. Charles Thorndike died about the 15th day of February, 1833, and no other will, codicil, or testamentary paper has been discovered.

There were other facts in the case, raising the question whether the will had been *cancelled*, but which it is unnecessary to recite.

*April 4th.*   *Hoar* and *F. Dexter*, for the appellant. By *St.* 1783, *c.* 24, § 2, any writing to revoke a devise of real estate must be signed by the testator in the presence of three or more witnesses. This will purports a disposition of both real and personal estate, the terms being, " all the residue of my estate, real and personal, I give," &c. ; it likewise specifies a parcel of real estate in Maryland : and it is duly attested to pass real estate. Consequently the unattested writing on which the decree of the judge of probate is founded, cannot operate as a revocation.

By the 9th section of the statute of 1783 and the preamble to that section, any will purporting a disposition of both real and personal estate, which shall not be attested and subscribed as the act directs for the devising of lands, tenements and hereditaments, shall not be allowed as a testament of personal

estate only. At common law a second will which cannot take effect as a will, does not take effect as a revocation, as this would defeat the testator's intention, the clause of revocation being merely subsidiary to the new disposition. *Laughton* v. *Atkins*, 1 Pick. 535, and cases there cited ; *Ex parte Ilchester*, 7 Ves. 348 ; *Edleston* v. *Speake*, 1 Show. 89 ; *Onions* v. *Tyrer*, 1 P. Wms. 343 ; 1 Powell on Dev. (Jarmain's edit.) 594, note ; *Osgood* v. *Breed*, 12 Mass. R. 534. This principle has been adopted in the provision above recited, and although the terms of the statute are confined to wills which are not duly attested to pass real estate, they will be extended by an equitable construction, to embrace revocations which fall within the reason of the provision. The revocation in the present case, therefore, which was intended to operate on the whole will, being ineffectual as to the real estate, shall not be allowed to affect the personal estate. The testator's intention is not to be taken by halves. It may be that in a particular case the intention of the testator will not in fact be defeated by permitting a general revocation to operate on the personal estate alone, but the Court will consider whether the case before them does not belong to the class of cases which fall within the mischief intended to be remedied. As to the construction of statutes, see *United States* v. *Fisher*, 2 Cranch, 386 ; *Whitney* v. *Whitney*, 14 Mass. R. 92 ; 6 Dane's Abr. 597 ; *Holbrook* v. *Holbrook*, 1 Pick. 248 ; *Church* v. *Crocker*, 3 Mass. R. 17 ; Co. Lit. 24 *b* ; Vin. Abr. *Statute*, *E* 6, *pl.* 81, and note, cites 11 Mod. 161 ; 1 Bl. Com. 87 ; Plowd. 10, 59, 60, 363, 365.

The language of this will is, " all the residue of my estate, real and personal " ; there is therefore no ambiguity, and extrinsic evidence is not admissible to show that the testator had no real estate at the time when he made the will, or that he has since aliened his real estate. If the terms '- real estate " in the will had any reference to the estate in Maryland, in which the testator had no interest which he could devise, and if the evidence was rightfully admitted to show that he had disposed of all his interest in that estate before the date of the revocation, still it does not appear by the will that he had no other real estate. The Court will not, on a question of the

Brown
*v.*
Thorndike.

probate of a will, try titles to land ; which requires the inter-vention of a jury. The evidence offered to show that the testator had no real estate at the date of the supposed revoca-tion is objectionable, because it is necessarily of a negative character. *Goodtitle* v. *Otway*, 2 Ves. jun. 606, note ; *S. C.* 2 H. Bl. 516 ; 6 Cruise's Dig. *tit.* 38, *Devise, c.* 6, § 75 ; 1 Pick. 241, note ; *Very* v. *Very*, 3 Pick. 374 ; *St.* 1817, *c.* 190, § 7 ; *Dudley* v. *Sumner*, 5 Mass. R. 438.

The present case is not only within the mischief intended to be remedied, but may fairly be considered as within the terms of the statute ; for this is not a revocation, *in præsenti*, but an ambulatory and testamentary paper, to take effect after the testator's death ; in other words, it is a will. Jacob's Law Dict. tit. *Wills*, cites 1 Inst. 111 ; *Cranvel* v. *Sanders*, Cro. Jac. 497 ; *Thomas* v. *Evans*, 2 East, 488 ; *Hitchins* v. *Bassett*, 2 Salk. 591 ; *Harwood* v. *Goodright*, Cowp. 87.

*J. Mason* and *S. Hubbard*, for the appellee. The question of revocation is, by law, to be tried by the court of probate, and if the legislature have made no provision for a jury in such cases, the court must have power to proceed without a jury. The circumstance, therefore, that titles to land may be affected by the admission of extrinsic evidence on the question of the probate of a will, does not prove that it is inadmissible. It was competent to the appellee to prove by evidence *aliunde*, that the testator had no real estate at the time of making his will, or if he had, that he afterwards parted with it, so that the will was not a will of real estate at the time when the revocation was made. It appears by the evidence in the case, that the testator made a conveyance.of all his right in the only parcel of real estate specifically mentioned in the will as belonging to him, and supposing that he had a devisable interest in that parcel, so far the will was revoked ; and it further appears that he had no other real estate at the time of making the will. *Hawes* v. *Humphrey*, 9 Pick. 350, 361 ; *Carter* v. *Thomas*, 4 Greenl. 341 ; *Graves* v. *Sheldon*, 2 Chipman, 71 ; *Very* v. *Very*, 3 Pick. 374.

According to the common law, the writing on this will is clearly a revocation, so far as regards the personal property ; and the *St.* 1783, *c.* 24, § 9, does not embrace a revocation

which through an insufficient attestation cannot operate on the
real as well as the personal estate given by the will. *Marwood*
v *Turner*, 3 P. Wms. 163 ; *Beard* v. *Beard*, 3 Atk. 72 ;
*Habergham* v. *Vincent*, 2 Ves. jun. 205 ; *Buckeridge* v.
*Ingram*, ibid. 652 ; *Hyde* v. *Hyde*, 3 Ch. Rep. 160, and 8
Vin. Abr. 154 ; *Attorney-General* v. *Ward*, 3 Ves. 331 ;
*Mortimer* v. *West*, 2 Simons, 274 ; *Kirke* v. *Kirke*, 4 Rus-
sell, 435 ; *Gallini* v. *Noble*, 3 Meriv. 690 ; *Cogbill* v. *Cog-
bill*, 2 Hen. & Munf. 467 ; *Winslow, Appellant*, 14 Mass. R.
421 ; *Deane* v. *Littlefield*, 1 Pick. 243.

But suppose the 9th section has a bearing on revocations,
the present case is not within the reason of the provision,
since the evidence proves that this will never disposed of real
estate, or if it did, that it had become a will of personal estate
alone, before the revocation, so that the testator's intention
cannot be defeated by allowing the revocation to operate on
the personal estate.

SHAW C. J. drew up the opinion of the Court. [After
stating the facts as above.]

The question upon these facts is, whether the will of
Charles Thorndike was in force, as a will, at the time of his
death, or whether the same had been duly cancelled or re-
voked.

The first point we shall consider is, the effect and opera-
tion of the postscript to the will, and whether it can operate
as a revocation. It is contended by the appellant, that it
cannot, and this argument is founded upon the construction
and equity of the statute of this State, regulating the execu-
tion and attestation of wills, and the operation of a will not
duly attested to pass real estate.    *St.* 1783, *c.* 24, § 9.

It is very clear, that by the law of England, that is, by the
common law, modified and amended by the statute of frauds,
a will not attested by three or more credible witnesses, ac-
cording to the statute of frauds, and so not effectual to pass
real estate, is yet valid as a will of personal property. *Cob-
bold* v. *Baas*, 4 Ves. 200, note ; and as a correlative propo-
sition, that a will containing devises of real estate and be-
quests of personal property, although by force of the statute
of frauds it cannot be revoked or altered, as to devises of

*Brown*
*v.*
*Thorndike*

*June 19th*

lands or tenements, unless by another will duly executed, or by some other writing of the devisor, signed in presence of three or more witnesses, yet that such a will may be revoked, as to all bequests and gifts of personal property, by any instrument in writing, though not signed in the presence of three or more witnesses.

The former rule has been altered by the provisions of a statute of this commonwealth before cited, which, with its preamble, is in these words. " And, as it may sometimes happen that a will respecting lands and personal estate, through inattention or otherwise, may be attested and subscribed by a less number of credible witnesses, than this act directs for devising lands, tenements, and hereditaments, which, if approved and allowed as a testament of personal estate only, might defeat the original intention of the devisor respecting the settlement of his estate :

" Sect. 9. *Be it therefore enacted,* that any will in writing hereafter offered for probate, which purports a disposition of both real and personal estate, that shall not be attested and subscribed as this act directs, for the devising of lands, tenements, and hereditaments, shall not be approved and allowed as a testament of personal estate only."

Hereupon the argument for the appellant is founded. For, although this provision of the statute does not in terms extend to revocations, and declare their invalidity to revoke a will so far as it is a will of goods and personal estate, when not attested so as to give it effect as a revocation of a devise of lands, yet it is contended for the appellant, that revocations are within the mischief, the same reason and principle applies to them, and therefore they ought to be held to be within the equity of the statute.

It becomes important, in considering this question, to inquire, what is the true meaning and construction of this provision, in its direct application to the purpose for which it was avowedly made ; to ascertain what is the reason and remedial principle declared, and intended to be enforced and applied by the statute, and to see how far, and in what cases, that principle ought to be extended by construction and the

equity of the statute, to the case of revocations, which do not come within the terms of the statute.

What is a will, "which purports a disposition of both real and personal estate," within the meaning of this statute ? Is it a sufficient cause for refusing the probate of a will, that upon the face of it, the natural meaning and force of the language is such, that, if the testator were seised of any real estate at the time of making his will, and should remain seised of it to the time of his death, the devise would operate to pass it ? Or, if the language be equivocal as to the testator's actual meaning in the particular case, but general and comprehensive enough to include real and personal estate, will the court of probate look into evidence *aliunde*, to see if there be any real estate upon which the will can operate, and if there is not, then to admit it to probate and give it effect as a will of personal property only ?

It is stated to have been decided by the Supreme Court of Probate, in the county of Norfolk, in 1796, that the will purported to dispose of real estate, because the words were sufficient for that purpose, and that no evidence *dehors* the instrument was admissible to show the state of the testator's property. This is a short note of the case, decided before the period at which the reports commence, appended to the case of *Deane* v. *Littlefield*, 1 Pick. 241. It is very mani fest, even from this short note, that the decision of the case was right, and did not necessarily call for the latter part of the opinion stated. The words were, *I give the remainder of my estate*, and the judge of probate approved and allowed the will, on the ground that it did not purport to dispose of real estate, and refused to hear evidence that the testator owned real estate at the time of making his will. The words of the will were quite sufficient to include and pass real es- tate, if the testator had any upon which it could operate. The allowance of the will therefore, rejecting the evidence, was directly contrary to the prohibition in the statute, and the decree must have been reversed. The further opinion, that no evidence was admissible to show the state of the testator's property, was *obiter dictum*, though it might be useful in the further progress of that cause.

Considering the general words used in that will, it would seem that the most which could have been claimed by those who wished to establish the will, as a will of personal estate, would have been to offer evidence, that there was no real estate upon which it could operate. I will not undertake to say that this decision is incorrect ; but as it was not the point directly decided, and as the reasons are not given, probably should it again arise in a case requiring a direct decision upon the point, it may be deemed worthy of a full and careful reconsideration.

If the statute should be construed according to its spirit and equity, it would seem, that where general words are used, the question whether such words do or do not purport a disposition of real and personal estate, would depend upon the state of the testator's property, and therefore, that evidence *aliunde* would be deemed admissible, as showing *quo animo* the words were used.

The leading guide in the construction and interpretation of a will is, the intent of the testator. The manifest object of the enactment before cited, was to carry into effect that which the law presumes to be the intent of the testator. It assumes as a legal presumption, that if it was the purpose of the testator, by his will, to give real and personal estate, and if, contrary to his intent and expectation, it cannot be carried into effect as to the real, it would not be conformable to his intent, but the contrary, to give it effect as to the personal. It assumes therefore, that he knows and understands, or at least believes, that he has real as well as personal property to dispose of by will ; otherwise, it is impossible to presume, that giving effect to his will as a will of personal property, though it could not have effect as a devise of real estate, for want of the requisite signature and attestation, would have any tendency to " defeat the intention of the devisor, respecting the settlement of his estate." By the term " settlement " in this connexion, I understand the distribution and apportionment of his property, among his children, or the other objects of his testamentary bounty. But such intention cannot be defeated, merely where the testator has used words sufficient in their ordinary import to pass real estate, but

where in fact the testator has no real estate ; the intention will be defeated only in the case where these words are used in connexion with the fact, that there is real estate upon which the words can operate.  And it is material, in this connexion, to consider the rule of law, that no devise can operate upon after-purchased real estate ; and therefore if the testator has no real estate at the time the devise is executed, the words of the will, however broad in their import, are wholly inoperative to that effect.  And the estate upon which alone a devise can take effect, must be estate of which the testator is seised, and it cannot extend so as to include expectant or contingent interests or rights to real estate.

If because the language is general and comprehensive enough to pass real estate, though there is none upon which it can operate, courts of probate are bound by force of the statute to declare the will wholly void, it is manifest that such a construction would defeat instead of promoting the intent of the testator, and would give it an effect contrary to the avowed purpose of the legislature.  It is usual in wills, as well as in other instruments, to use broad and general language, large enough to embrace every species of property, although there are but few species of property in the mind of the testator, or in his power to bequeath, upon the safe maxim, that *omne majus continet in se minus.*  As " all my estate of every name and nature," " all my property wherever," &c.  The use of such language, therefore, leads to no conclusion as to the testator's understanding of the nature and kind of property, which he intends to bequeath.

This view of the question is not unsupported by authority.  In a recent case, (*Very* v. *Very*, 3 Pick. 374,) an unattested will contained these words, " the remainder of my property of whatsoever name or nature."  On the back was written a postscript appointing an executor, and a schedule headed thus, " the situation of my property is as follows," enumerating promissory notes and cash.  The case finds that he was possessed of no real estate, and of no other personal estate, except household furniture and goods.  It was held, that this will did not purport to dispose of real and personal estate, within the meaning of the statute.

The enumeration of property, all of which was personal, was considered as having an influence in that case. But the principal fact, upon which the decision proceeded, was, that he had no real estate, and this must have been shown by evidence *aliunde,* because it did not appear by any thing in the will or on the same paper. And it seems very clear, that if the fact had been otherwise, and if the testator had real estate, the decision must have been otherwise.

May not the phraseology used in the statute, as descriptive of a will, viz. " which purports a disposition of both real and personal estate," in the place and connexion in which it is used, bear this interpretation ; the use of words of sufficient intrinsic force, to pass both real and personal estate, used by a testator, with a knowledge and belief that he has real estate on which the will can operate, and from which his intent so to use it, may be inferred ? This is the only case in which the intention of a testator, in the settlement and apportionment of his estate, could be defeated, by allowing his will to be approved as a will of personal property, and denying it effect as a will of real estate. And, as every man must be presumed to know the state of his own property, if it can be shown that he had no real estate, when he made his will, does it not afford a conclusive presumption, that he knew he had none to be affected and to pass by it, that he did not intend to devise real estate, by the comprehensive language used, and of course, that no such intent can be defeated ?

It is to be remarked that the terms, " purporting a disposition," &c. are used as qualifying the whole will, and not as descriptive of particular words ; and in this respect there may be a slight difference between the meaning of this clause, and the words " purporting to devise or to give," or the like. The latter would rather seem to look at the intrinsic force of the words used, and the former, at the actual effect of the whole will, in working a disposition of the property upon which it operates.

The difficulty in putting this construction upon the statute of wills, suggested in the argument, and which naturally arises out of the case, is this ; that in the probate of a will, which 'n this commonwealth is conclusive in its operation upon real

Brown
*v.*
Thorndike.

as well as personal estate, and which is a proceeding under a peculiar jurisdiction, not proceeding according to the course of the common law, and a proceeding in some measure independent, and preliminary to the direct questions of title arising under it, it would be necessary to go at large into proof of the fact, that the testator had or had not real estate, upon which the will could operate ; and this difficulty may be enhanced by the necessity of proving a negative, namely, that the testator had no real estate. Perhaps, however, this difficulty will be regarded as somewhat diminished by the consideration, that where a testator uses language, which in its natural import is broad enough to include real estate, the legal presumption would be, that the testator has real estate, on which the will would operate until the contrary is shown ; so that it would put the burden of proof upon those who would set up such an unattested will as a will of personal property only ; and if the case really exists, which the statute supposes, that is, that the testator intended to equalize and apportion the value and amount of his testamentary gifts among the objects of his bounty, by giving real estate to some, and personal to others, in such a way that his general purpose would be defeated by permitting the will to stand good as to the one and fail as to the other, it supposes such an amount and kind of real estate, held by the testator, as would render the fact easily susceptible of proof.

But the difficulty of proof can afford no substantial objection ; for whatever the law places within the jurisdiction of the probate court, and whatever questions of fact or law the exercise of that jurisdiction necessarily involves, must be judicially tried and determined in the mode provided by law and the constitution and course of proceeding of that court. As to proof of a negative, the case of *Beaumont* v. *Fell*, 2 P. Wms. 141, is in point, where the name of a legatee was mistaken ; nevertheless, on proof that there was no person of the name mentioned in the will, and that the claimant was intended, and the mistake explained, the claimant was held to be the person intended as the legatee. But the material fact was the negative, that there was no person of the name mentioned in the will.

As to the admission of parol evidence, the rule is often of difficult application, and it is too . complicated a subject to be discussed here. It is a well settled rule, that parol evidence cannot be received to alter or control what the testator has expressed, or to show by his declarations or otherwise, that he intended something different from what the language imports. But it is equally clear, that parol evidence, and other evidence *aliunde,* is constantly admitted, to show the condition and circumstances of the testator's family and property, the nature and condition of the subjects and of the objects of testamentary dispositions, with a view to giving effect to the expressions which the testator has used, and to remove and explain latent ambiguities.

A familiar instance is that of *Wild's case,* 6 R. 16, where a devise was to one and his *children.* The term *children* is equivocal in the sense in which it is there employed; it might be used as a word of limitation, and then it would be an estate tail to the father, or it might be a word of purchase, and then it would be a joint life estate to the father and children. It was then necessary to resort to matter *dehors* ; and inquire whether the devisee had children at the time, and according to this fact, introduced by parol evidence, the words of the will would have the one or the other construction

So evidence of the state of the testator's property, to show that stock and not annuities was intended. *Colpoys v. Colpoys,* 3 Jacob's R. 451 ; *Fonnereau* v. *Poyntz,* 1 Bro C. C. 472 ; *Jeacock* v. *Falkener,* 1 Bro. C. C. 296.

To put an instance more directly applicable to the construction of this statute. Suppose a testator should use the words, " all my estate and property in manufactories ; " " all my wharf property ; " " all my ferry estate." There being many manufacturing corporations in the first case put, it would be entirely uncertain whether the testator intended stock in manufacturing corporations, which is personal property, or an estate in lands and buildings employed as manufactories. So there being many incorporated wharf companies, holding property of great value, it would be wholly uncertain in the case supposed, whether the testator intended shares in a corporation, or an estate in fee simple. So of the ferry estate

t would be uncertain whether it meant a chattel interest in the franchise of a ferry, or a farm and house used in connexion with a ferry and thus denominated. In all these cases there would be a latent ambiguity. All would be plain and clear, on the face of the will. It would be only in coming to apply it to the subject matter of the gift, that the ambiguity would arise. Then it would be absolutely necessary in all these cases, in order to ascertain whether the will purported a disposition of real estate or not, to go into evidence *aliunde*, to determine whether the subject matter of the gift is real or personal. As the probate court are bound to allow or reject an unattested will, as it does or does not purport to be a disposition of real estate, it becomes absolutely necessary in the cases proposed and similar ones, to go into evidence *aliunde*, to determine whether the property thus described is real or personal, and to admit the will to probate or disallow it, according to the result of such inquiry. .

Perhaps the just result of this general inquiry into the principle and construction of the statute of wills, is, that where the words are equivocal, and leave it doubtful whether real or personal estate is intended, courts of probate may and must admit evidence *aliunde*, and must inquire at large into the nature and circumstances of the testator's property, with a view to the question of probate ; but that where the will on the face of it professes, as in the case of Mr. Thorndike's will, to give real and personal estate in terms, or where there is in the will a specific or general devise of houses or lands, or other real estate, courts of probate may feel themselves bound by the express letter of the statute, to consider such a will as a will purporting a disposition of real and personal estate.

But it is not necessary to decide these questions, and I have thus far considered this statute in its direct application to the case provided for, in order to ascertain the principle intended to be declared and established by the statute, with a view to determine how far that principle will extend, and whether the case at bar falls within it.

It is very clear, that but for the provision in the Massachusetts statute, the instrument of revocation indorsed on Mr. Thorndike's will, would be quite sufficient to revoke th �millot will,

34 *

so far as it operates as a gift of personal estate. The statute not requiring the formalities of attestation, or of signing in presence of three witnesses, an instrument may be a good will or a good revocation, as to personal property, without it. Then if the instrument in question is not a valid revocation of this will, as to the personal estate, it is because the statute intervenes to prevent it. But it is admitted that the statute in terms does not extend to revocations. Still it is contended, and this is the whole stress of the argument, that revocations are within the principle of this provision of the statute, that it must therefore be construed to be within the equity of the statute. Without at present stopping to state the rules of construction, which are familiar and uncontested, and which mostly result in considering the various means, by which the intent of the legislature, in the act they have made, can be discovered, it is well established, that in the construction of remedial statutes, cases not within the letter of the statute, are taken to be within its spirit and equity, upon a reasonable certainty arising from a consideration of the statute and of every part and clause of it, and from the obvious end and purpose to be accomplished by it, that it was so intended by the legislature ; and also that a case may come within the letter, which shall not be judicially construed to be within the act, because it is alike manifest, to a reasonable certainty, that it was not so intended by the makers of the act.

It becomes then necessary, when a judicial tribunal is thus called on to extend the operation of a statute by equitable construction, to a case not within its terms, to ascertain with great care, that the proposed case is within the principle declared by the statute. If the language of the statute is in any degree loose and indeterminate, and such as by a literal construction would carry the operation of the letter beyond the mischief contemplated to be remedied, however courts might feel bound by the terms of the statute in the particular case specified, they cannot be so bound, when called upon to extend the principle of the statute to a case not within its terms. For instance, if the legislature, in the provision in question, in declaring the absolute nullity of unattested wills, have carried the enactment somewhat beyond the principle and reason, on

which it is founded ; it is not to be presumed, that if they
had extended the same provision to revocations, they would
have used language open to the same exception ; on the con-
trary, we are to presume that the provision would have been
couched in such precise and accurate language, and guarded
by such plain limitations, as to confine its operation to cases
coming within the reason and principle of the statute.

It is with these views that the Court have endeavoured to
ascertain what is the principle of this statute, with a view to
the application of it to the instrument in question.

It seems to us very clear, that the principle is this : The
legislature considered it important to require that a devise of
lands should be executed with certain solemnities, to guard
against fraud and abuse, and to declare as a necessary means
of enforcing this salutary provision, that all devises of lands
not so executed should be void and of no effect.    But regard-
ing wills of goods and personal property as of comparatively
less importance, the same formalities and guards against impo-
sition and fraud were not deemed necessary.    It would follow
as a necessary consequence, that an instrument might be so
executed, as to be valid as a will of personal property, and
invalid as a devise of real estate.    It was then immediately
foreseen, that this result might occasion disappointment and
do injustice ; that a testator, not being aware of the effect of
the law, through inattention or otherwise, having made an
instrument which he deems to be valid in all respects, may be
presumed, and indeed must be presumed, to have intended,
that if his intent cannot be carried into effect in full, it should
not be carried into effect partially, but that he would rather
have his estate distributed, as an intestate estate, by the
equitable principles of the law.

Suppose it conceded that this principle should be extended
by the equity of the statute, to revocations, how would it
apply ?

A testator has a will on hand unrevoked, which, if it were
to take effect, would pass real and personal property.    He
desires to revoke it *in toto*, intending either to make a new
will, or to die intestate.    He executes an instrument declaring
such entire revocation, but it is not executed in presence of

three witnesses, and therefore, by force of the statute, it can-not operate as a revocation, in respect to the real estate. This was unforeseen by and unknown to him ; the law cannot presume that it was his intention to revoke it as to personal, and let it take effect as to his real estate ; his general intent and purpose would be defeated in thus giving it a partial effect, and therefore, it shall not operate as a revocation, in respect to the personal estate.

But it is manifest that this principle cannot apply, unless the revocation would have this partial effect, or, in other words, unless it would revoke the will in part, and leave it good in part, against the testator's general intent ; and this depends upon the question, whether the will at the time of the revocation, is a will both of real and personal estate.

In this respect it becomes necessary to take into considera-tion, the difference between an original will and a revocation, a difference inherent in the nature of the two instruments.

A will refers to the condition of the testator's property and affairs at the time it is made ; and he may be presumed to know, and to have in his mind, what that condition is. If therefore he, in terms, devises real estate, it may raise a con-clusive presumption that he then has real estate, so as to ex-clude evidence *aliunde* to the contrary, and thus give a certain effect to the term " purports " as used in the statute.

But a revocation may be, and indeed must be, made after the execution of the will, and oftentimes long after, when great changes have been made in the situation and circumstances of the testator and his property, and it must refer to the will as it then stands, and according to its legal effect upon the testator's property at that time. It cannot therefore depend upon the mere language of the will, but upon the effect and operation of that language upon the prop-erty and estate of the testator, then to be affected by it. This consideration renders it necessary to inquire by evidence *aliunde*, how the real and personal property to be affected by it, is situated, or in other words, to inquire and ascertain whether there is any real estate upon which it can operate. Then, if the testator was seised of real estate when the will was made and such real estate has been wholly alienated, and

it being clear, by a well known rule of law already adverted to, that the will cannot operate upon after-acquired real estate, it follows that it then stands as a will of personal estate only. If so, the revocation being sufficient in point of law to operate as a revocation of a will of personal property, such must be presumed to be the intent of the testator ; to give it effect as such would advance and not defeat his general intent and purpose. To apply the provision of the statute by any supposed equity of construction to such a case, would, we think, be going contrary to the reason and purport of the statute, and would be not only defeating the intent of the testator, but the intent of the legislature. Supposing a testator, having made his will, containing a specific devise, say of a house, accurately described, and after having alienated that estate, makes an instrument of revocation unattested, reciting his will, and the alienation of the estate devised, and drawing the correct conclusion, that so the will now stands as a will of personal estate only, thereby declares it revoked ; is there any thing in the principle of the statute to prevent this from being a good revocation ? And what is this recital in an unattested instrument, except evidence of the fact, that there is no longer any real estate for the will to operate upon, and the testator's knowledge of that fact, and his intent to act upon that knowledge ? But if such fact, and notice of it by the testator, are sufficient to give effect to an unattested revocation, why may not the fact and notice be proved in any other way ? If the instrument of revocation were enclosed in a letter by the testator to a friend, making the same statement, I cannot perceive why it should not have the same effect. If this be the case, as every man must be presumed to know the state of his own property, and to act upon the knowledge of facts as they actually exist, and if, in the case supposed, it could be shown by satisfactory evidence, as for instance by a deed on record and an entry by the grantee under it, that the estate has been specifically conveyed before the revocation, so that at the date of the revocation, it did in fact stand as a will of personal estate only, it appears to be a reasonable presumption if not a conclusion of law, that the testator so knew and understood it and acted upon the knowledge of such fact, and

Brown
v
Thorndike.

so that the instrument of revocation, in operating as the revocation of a will of personal estate only, occasions no disappointment, no defeat of the purpose of the testator, but is in precise conformity with his intent.

Nor can I perceive any material distinction between the case supposed, of a specific devise of real estate, definitely described, and a general devise. If a testator, reciting his will and reciting that he had alienated all his real estate on which it could operate, should thereupon execute an unattested revocation, I do not know why the result would not be the same. In the latter case, should .resort be had to other proof than such recital, it might be more difficult as before stated, to adduce full and satisfactory evidence ; but this seems to be no sufficient reason, why effect should not be given to the fact, when it can be satisfactorily proved. That it is the fact, of the state of the will to be revoked, and not the recital of it, in an unattested revocation, which would give effect to such revocation, supposing the principal of the statute applicable to revocations, I think is manifest from this, that if the fact were mis-recited, and if in truth, contrary to the supposition of the testator, there was real estate, upon which the will would operate, the revocation could not probably take effect.

The case of *Deane* v. *Littlefield*, 1 Pick. 239, is strongly applicable to the present case. It was a will made by a minor, attested by three witnesses, by which he gave to his mother, " all his estate and property, of any description whatever." This was contended to be within the statute, because as the will of a minor it could not devise real estate, and the statute intended to prevent a will general enough in its terms to pass real estate, but which could not so operate, from being established as a will of personal estate. It was however decided by the Court, that as the will was attested by three witnesses, the statute in terms did not apply to it ; and further, that as whatever estate the testator had was given to his mother, the case did not come within the reason of the statute, which is, to prevent one devise or legacy from being established and another defective, which would be contrary to the intention of the testator ; and not being within the words or spirit of the section, the provision must be considered as wholly inapplicable

We c me now to apply these principles to the present case. Mr. Thorndike, in his will of 1825, gives all his real and personal estate to a trustee. It is argued for the appellant, that this could not apply to the estate in Maryland, he cause, obtaining that in right of his wife, he had only a life estate ; which of course would leave nothing to pass by devise. It does not distinctly appear, whether he had or not, any estate larger than a life estate ; he speaks of it as estate of which he became possessed, on his marriage. But whether he did in fact take any estate therein larger than a life estate, and which could pass by devise, it is very clear that in making his will he thought and believed that the estate in Maryland would so pass ; because he gives directions to his trustee and devisee, in relation to the management of that estate, which clearly imply his belief, that his trustee would take that estate by force of that devise. And as it is satisfactorily proved that he had no other real estate, at the time of making his will, it is safe to infer that it was in reference to the estate in Maryland, that he used the terms " real and personal estate," in the residuary clause of his will. The case then is reduced to this, that when he made his will, he had an interest in real estate in Maryland, which he thought would pass by his will ; that he used language in his will, applicable to a devise of real estate, by which he referred to the estate in Maryland ; that he afterwards alienated that estate by a conveyance in fee, which operated as a revocation of his will *pro tanto* ; that in point of fact, it then stood as a will of personal estate only, and then he executed an instrument in due form of law, sufficient as the revocation of a will of personal property. Under these circumstances the Court are of opinion, that the case is not within the reason or spirit of the statute ; it is admitted not to be within the words, and so the statute is wholly inapplicable, and under the general rule of law the instrument is valid, as a revocation. Whether, in a case which comes within the principle of the statute, as thus construed, the statute will be held to extend to revocations, though not within the words of it, is a question upon which we give no opinion, it not being necessary to the decision of the present case.

This decision also renders it unnecessary to consider an'

other point which was fully argued, that is, whether a will can be deemed *cancelled*, within the meaning of the other clause of the statute, by writing words upon it to that effect, not actually crossing or obliterating any of the words of the will, attestation, or signature ; and upon this question therefore we give no opinion.

It was contended by the counsel for the appellant, that supposing the instrument of revocation to be well executed, still it did not operate as a revocation, because it manifested a future intent to revoke, and not an actual revocation.

The rule is well settled, that the declaration of an intent to revoke by some future act, is no actual revocation. *Cranvel* v. *Sanders*, Cro. Jac. 497 ; *Thomas* v. *Evans*, 2 East, 487.

But we think the present case not affected by that rule, because, taken together, the instrument is one of present revocation. The testator begins by stating an intention of altering the tenor of this will, or rather of making a new will, but this is mere inducement to the latter clause, in which he says, " therefore be it known, that if I should die before another will is made, I desire that the foregoing be considered as revoked and of no effect."

Taking it in great strictness as hypothetical and conditional, the condition has been complied with ; he has died before making another will. But we think it must be construed according to the obvious intent, and according to the subject matter. If he should make a new will, it is to be presumed that it would embrace the whole subject of his testamentary dispositions, and so would operate as a revocation of the present. If he should die before making a new will, this was to be considered revoked and of no effect, and of course in that event he would die intestate. The effect, we think, is this, that " this will is revoked at all events, and I intend to make a new will, or should I not do so, I prefer to die intestate." It is to be remarked, that the words of revocation are in the present ; " I desire that this will be considered as revoked and of no effect." It does not declare an intent to revoke ; it looks to no future act to be done, to effect such revocation, and in this respect it differs from the cases cited. The instrument written on the will, therefore, must be consid-

ered, not as the declaration of an intent to revoke by some future act, but as an actual instrument of present revocation, by which the will in question was legally revoked.

*Decree of the judge of probate affirmed.*