THE HARTFORD-CONNECTICUT TRUST COMPANY, TRUSTEE, *vs.* MARY A. THAYER ET ALS.

First Judicial District, Hartford, May Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, every material and relevant extrinsic fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator and of his family and affairs, is admissible in evidence, provided it

does not materially qualify or contradict the instrument or inter-polate a testamentary gift which its tenor does not justify.

In the present case, where the paramount issue was whether the testatrix intended to exercise a power of appointment given her in the will of her husband, the trial court admitted evidence of statements made by her at the time her will was made which tended to show her knowledge of the extent of her own prop-erty and of the fact that her husband had conferred upon her the right to dispose of a portion of his estate. *Held* that the trial court did not err.

It is not essential to the valid exercise of a power that the donee understand that, in legal phrase, it is termed a power of appoint-ment, nor need he know specifically when, where or how the power was given, the vital question being: was the power then created and was the donee aware of its existence?

As in all matters of testamentary construction, it is the intent of the donee to execute the power of appointment by will that is of controlling importance; this intent however manifested, whether directly or indirectly, positively or by implication, must be apparent and clear so that the instrument is not susceptible of any other interpretation, for, if any doubt exist, the power cannot be deemed to have been executed.

The intent to execute a power of appointment may be indicated in three ways: (1) by a reference in the will, or other instru-ment, to the power; (2) by a reference to the property which is the subject of its execution; (3) or by provision in the will or other instrument, which, except as an execution of the power, would be ineffectual and inoperative, and in the case of a will, the test is whether it was operative when drawn, since it is the intent of donee at that time, and not at the time of his death, which governs.

For the purpose of ascertaining the intent of the donee, a court may inquire into, and compare, the amount of his property and that of the estate which is the subject of the power.

It is not unnatural for the donee to refer to the subject of the power in the same terms that he would use in connection with his own property and, therefore, such language as "my estate" or "my executor" is of small significance in determining his intent.

A power created by will may be executed by a will drawn prior to the death of the donor, where as in the present case, the donor, by word of mouth, authorized its immediate execution and, where, under all the circumstances, it was the clear and apparent intent of the donee to accomplish that result.

The execution of a codicil which in terms ratifies and confirms a previous will has the same force and effect in law as if the

will had been re-written, re-executed and republished at the date of the codicil.

On April 14th, 1916, the husband of the testatrix executed a will in which he bequeathed to her for life the income of $500,000, the principal to be distributed at her death as she might by her will direct. On July 14th, 1916 she informed an officer of the plaintiff trust company that she had no property of her own but that her husband had instructed her to make a will disposing of $500,000; whereupon a will was prepared and executed in which no specific mention of the power was made but which contained provisions for specific legacies of $375,000 and for the distribution of a residue. Shortly after her husband's death in 1919, this will was again read to, and approved, by her; and in 1922 she executed a codicil providing solely for an additional legacy of $10,000. In 1925, she died possessed of a house, which, it appeared, she owned at the time her will was drawn, and of personal property of the value of $82,379. The trial court concluded that, by her will, she had intended to execute, and had executed, the power of appointment contained in her husband's will. *Held* that the trial court did not err.

Argued May 6th—decided July 30th, 1926.

Suit by the trustee under the will of Darius Miller, late of New Britain, deceased, for advice in the administration of its trust, involving the determination of the question whether Elizabeth B. Miller, the deceased wife of the testator, had validly exercised a power of appointment conferred upon her in the will of her husband, brought to the Superior Court in Hartford County and tried to the court, *Marvin, J.;* judgment rendered that said power had been validly exercised, from which the heirs-at-law of Elizabeth B. Miller appealed. *No error.*

On April 14th, 1916, Darius Miller, a resident of New Britain in Hartford County, executed a will, and on May 31st, 1918, a codicil thereto. He died April 2d, 1919, at the age of eighty-nine years, and on April 21st, 1919, his will and codicil were duly probated in the Court of Probate for the district of Berlin.

The third paragraph of his will reads as follows:

"Third: I give and bequeath to the Connecticut Trust and Safe Deposit· Company, of Hartford, Connecticut, and to its successor or successors, in trust, the sum of five hundred thousand dollars ($500,000), for the following uses and purposes, to wit: To hold, manage and invest the same, with full power of sale and reinvestment of any part thereof, at the discretion of the trustee, and to pay over the net income thereof, as the same shall accrue from the date of my decease, to or for the use and benefit of my said wife during her lifetime; and further, if necessary for her ample support and comfort, to pay to her or apply for her use and benefit, in addition to the income, so much of the principal as in the discretion of the trustee may be required for that purpose; and upon her death to pay, transfer and deliver the principal of said fund then remaining in such manner and to such beneficiaries as my said wife, by her will, may direct, and I give to her the power and authority, if she shall survive me, to dispose of all of said principal remaining at her death, by her will; but if she should leave no will, or should fail to make testamentary disposition. of said fund, then and in that event I direct the trustee to pay and distribute said fund in accordance with the statute of distributions of this State in force at the time of her decease, to such persons as the Probate Court for the District of Berlin shall find to be her legal heirs at law and the distributees of her intestate personal estate, and I authorize the trustee to make distribution thereof. If my said wife shall not survive me, then and in that case I give, devise and bequeath said sum of five hundred thousand dollars ($500,000), and authorize my executors to distribute said sum in accordance with the statute of distributions of this State in force at the time of my decease, to such persons as the Probate Court for the District of Berlin shall find would be her legal

heirs at law and distributees of her intestate estate if she had survived me and died immediately thereafter. The foregoing provisions for my said wife, together with the legacies and bequests to her under the second clause, are in lieu of dower."

The Connecticut Trust and Safe Deposit Company accepted said trust and duly qualified and continued to act as such trustee till its consolidation with the Hartford Trust Company under the name of the Hartford-Connecticut Trust Company—the plaintiff herein, since which time it has continued to act in that capacity.

The trust was duly constituted and the full sum of $500,000 was duly transferred to the trustee and has since remained and now is in its possession. The securities of which said fund was composed, have appreciated in value while in the hands of the trustee and their aggregate value at the time this case was tried was $762,087.90.

Elizabeth B. Miller, the *cestui que trust* and donee of the power named in the quoted clause of the will of Darius Miller, was his wife and lived with him for many years and to the time of his death. She had little, if any, knowledge of business affairs.

On July 14th, 1916, she executed a will by which she provided legacies to various persons in the total sum of $375,000; bequeathed a house and its furnishings to a nephew, the remainder of her personal effects to a niece, and constituted the residue of the estate a trust fund in the hands of the Connecticut Trust and Safe Deposit Company for the joint benefit of her two sisters. This will was put in the vault of the plaintiff for safe-keeping, and afterward transferred to the safety box of Darius Miller in New Britain, where it was found with his will on April 2d, 1919, when he died. It was then returned to the vault of the plaintiff, where it remained till her death. The will was again read to

her by the president of the Connecticut Trust and Safe Deposit Company and approved by her July 17th, 1919. On July 9th, 1922, Mrs. Miller executed a codicil to her will, providing solely for a legacy of $10,000 to a friend and companion. This legatee died before Mrs. Miller and this legacy lapsed. Mrs. Miller died on March 10th, 1925. Her will and codicil have been duly probated in the Court of Probate for the district of Berlin, and the plaintiff has qualified as administrator *cum testamento annexo* of her estate. Her will contains no specific mention of the power of appointment or of the fund which was the subject of the power. It is claimed by the beneficiaries therein named, that the will of Mrs. Miller makes a complete and valid execution of the power created in the third clause of the will of Darius Miller, but certain of her heirs at law contend that Mrs. Miller's will cannot be held to have executed the power and that the fund to which the power applies should be distributed to her heirs at law under and by virtue of the provisions of the will of Darius Miller. Other relevant facts will appear in the opinion. In this situation the plaintiff brought this action to the Superior Court, praying: "An adjudication as to the several matters in respect to which said questions and doubts have arisen and a decree settling the construction of said third clause of said will of Darius Miller and determining whether or not said trust fund has been validly appointed and whether the remaining principal of said trust fund has been disposed of by the will of Elizabeth B. Miller and adjudicating the question what was the character and extent of the interest and estate of Elizabeth B. Miller in the trust fund created under the third clause of said will of Darius Miller and adjudicating the question who is entitled to receive said trust fund, including the accumulations thereof."

The Superior Court held (1) that whether the power had been executed was dependent primarily upon the intent with which her will was executed by Mrs. Miller, (2) that that intent must be discovered in the will itself, read in the light of the circumstances surrounding the testatrix when the will was made, thus enabling the court to put itself as far as possible in the place of the testatrix.   After admitting evidence of such circumstances, the court reached the following conclusions as to the several questions raised by the complaint: (1) that the trust fund was validly appointed, (2) that the principal thereof was disposed of by the will of Mrs. Miller, (3) that the character and extent of the interest of Mrs. Miller under the third clause of her husband's will, was a use for life coupled with a power of appointment under and by the terms of the will, and (4) that the beneficiaries under her will were now entitled to the fund.

*John T. Robinson,* for the plaintiff.

*Charles Welles Gross,* with whom was *Wallace W. Brown,* for the appellants (the heirs at law of Elizabeth B. Miller).

*Edward M. Day, A. Storrs Campbell* and *Lawrence A. Howard,* for the appellees (the beneficiaries under the will of Elizabeth B. Miller).

HAINES, J.   Of the thirty-six reasons of appeal, the first and clearly the most important raises the question whether the power of appointment given Mrs. Miller by the third clause of Darius Miller's will was duly exercised by the provisions of her will.   This is correctly stated by counsel for the appellants as the "ultimate issue" in the case.   Of the remaining reasons of appeal, there are several which relate to matters

bearing more or less directly upon this main question, and the rest may be grouped under two heads, viz.: those relating to changes in the finding and to the admission of certain evidence.

We first consider the rulings upon evidence. For the sole purpose of showing what knowledge Mrs. Miller had of her property at the time of the making of the will, the trial court permitted Mrs. Newton, Mr. Whaples and Mr. Thayer to testify as to what Mrs. Miller had said to them 'of this, her statement being that she had no property of her own. Again, for the purpose of showing that Mrs. Miller knew she had a right to dispose of certain property, by provisions in her husband's will, Mr. Whaples was permitted to testify that she said her husband told her to come to him and make a will disposing of $500,000. She made her will as thus directed, by her husband, and on July 19th, 1919, after his death, Mr. Whaples read her will to her, and she then approved of it as written. This evidence of the knowledge which Mrs. Miller had as to the extent of her own property and of the fact that her husband was giving her a right to dispose of $500,000 of his property, established facts within her knowledge at the time her will was made. Their significance is manifest when it is noted that in her will she gave specific legacies amounting to $375,000. Relevant and material extrinsic facts within the knowledge of the testatrix, are always admissible for the ultimate purpose of discovering the intention of the testatrix in the use of the language which she adopts in her will. Our latest recognition of this principle is in the case of *Stearns* v. *Stearns,* 103 Conn. 213, 130 Atl. 112. We there expressly approved of Wigram's fifth proposition, "For the purpose of determining the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given

by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will."

We were careful to state (p. 221) that in our application of this rule, extrinsic facts could not be admitted "so as to materially qualify or contradict the instrument or interpolate a testamentary gift which its own tenor did not justify." The evidence here in question did not and could not have this result. The purpose of its admission, as stated by the trial court, was "of enabling the court to put itself, as far as possible, in the place of Mrs. Miller and determine whether or not, by making the will she did, she intended to exercise the power given to her in the will of Darius Miller." We think the evidence was properly admitted for that purpose. *Thompson* v. *Betts,* 74 Conn. 576, 51 Atl. 564; *Bond's Appeal,* 31 Conn. 183, 190. This rule has been generally recognized and applied in other jurisdictions, as illustrated by the following cases among many: *Lee* v. *Simpson,* 134 U. S. 572, 578, 10 Sup. Ct. 631; *Blake* v. *Hawkins,* 98 U. S. 315, 324; *Brown* v. *Thorndike,* 32 Mass. (15 Pick.) 388, 400; *Postlethwaite's Appeal,* 68 Pa. St. 477, 480; *McCall* v. *McCall,* 4 Rich. Eq. (S. Car.) 447, 455; *Scaife* v. *Thomson,* 15 S. C. 337, 357; *Clark* v. *Clark,* 19 S. C. 345, 348, 349. There is but one reasonable conclusion to be drawn from these facts, viz., that Mrs. Miller knew that the personal property which she gave in her will was property of her husband, which he had, by his will, given her the power to dispose of by her own will. Since he had not transferred or delivered to her, in form, any of the $500,000, it was a

natural and a necessary conclusion on her part that this $500,000 was to be given by her because of a provision he had made therefor in his will, and we are entitled to infer from these facts that she had this knowledge. We are then led, irresistibly, to the further conclusion that the intent of Mrs. Miller, as expressed by her will, was to give by it, not property which she believed was her own, but a portion of the property of her husband which he had authorized her by his will to dispose of. Though she probably had no understanding of a power of appointment as that term is used in the law, she did know she had the power to dispose of $500,000 of property which belonged to her husband. With this knowledge, then, she made her will, giving $375,000 in specific legacies and leaving the residuum to two sisters who were the natural objects of her bounty. Looked at in the light of her own knowledge of the situation, and noting the aggregate of her gifts, and the belief on her own part that she had no property of her own, and there being no evidence to the contrary, it is an obvious deduction from the will that Mrs. Miller intended to exercise the authority which her husband had informed her of, and which was the occasion of his sending her to Mr. Whaples. We think this intention is apparent and clear and in no way doubtful. The trial court found this intention to be a fact, having put itself, as near as possible, in the position of the testatrix. Reading her will in the light of these extrinsic facts within her knowledge, as found by the trial court, we are of the opinion that the conclusion of the court is supported by the subordinate facts found, and is a reasonable and indeed an inescapable one. The trial court found that the day she executed her will, "Mrs. Miller knew that she had the right to give away by her will a trust fund created by her husband's will." The appellants construe this as

saying that she knew her husband had made a will, that she knew its contents, and that he had therein created a power of appointment if she survived him. We do not so construe the language used by the court. The court found as a fact that she knew she had a right to give away a fund of $500,000 of her husband's property. The court here designates that fund by the words, "a trust fund created by her husband's will." We think the fact which the court meant to express by the words used, would have been clearer if "the" had been used in place of "a." This, we believe, is its proper meaning. The designation of the fund as a "trust fund," was inaccurate, but the conclusion otherwise expressed by the finding is, we feel, a sound one and supported by the subordinate facts. The appellants argue that "there can be no intent to execute it [the power], unless the donee knows he has it to execute." We deem this requirement to be satisfactorily met, however, since the donee knew she had been given, by her husband, a power of disposal over a certain amount of his property. A donee need not be learned in the law and understand that such an authority was therein known as a power of appointment, nor need she know specifically when, where, or how she was given the power. The controlling fact was that she had been given this power by her husband and this she knew. It is the pertinent question in the opinion in *In re Slack's Settlement*, L. R. (1923) 2 Ch. Div. 359, quoted by the appellants: "Did the lady know of the existence of the power?" Clearly, in this case, Mrs. Miller did know of its existence. We cannot concur with the appellants' conclusion when it is said in the brief, "her statement that Darius had asked her to make a will giving away $500,000 does not show any knowledge or appreciation on her part that she then had, or was to have, the right to exercise a power over

property belonging to Darius, the right to dispose of property which was not hers but his." Especially when coupled with the further fact found that she then believed she had no property of her own, her statement above referred to shows beyond peradventure that she knew she was exercising a power to give away "property which was not hers but his." It is somewhat idle to speculate upon what she thought was the source of this power which her husband had given her. It is quite unimportant whether she believed he was going to make her a gift during her life upon which her will could operate. All she then knew, so far as appears, was that he owned the property and she did not, and that he had given her the right to dispose of that amount of it. There is nothing in the record as we read it which permits us to go beyond this simple fact.

Having the knowledge of her power of disposal, then, did Mrs. Miller intend by her will to exercise and execute that power? And if so, did the will as drawn have that result? And these questions we may, properly and conveniently, discuss together.

The pole star of testamentary construction is intent —the intent of the testator—and this intent is to be found in the will itself and cannot be aided by extrinsic evidence thereof, but the will may and should be read in the light of such surrounding circumstances as extrinsic evidence may show she had knowledge of. This is also, and necessarily, true of the intent to execute a power by will, and essentially the same test applies: " 'The intention to execute the power must be apparent and clear, so that the transaction is not susceptible of any other interpretation, and, if it be doubtful under all the circumstances, that doubt will prevent it from being deemed an execution.' " *Union & New Haven Trust Co.* v. *Bartlett,* 99 Conn. 245, 255, 122 Atl. 105, citing Story's Equity Jurisprudence (14th

Ed.) Vol. 1, p. 245; *Hill* v. *Conrad*, 91 Tex. 341, 43 S.W. 789. "The main point is, to arrive at the intention and object of the donee of the power in the instrument of execution; and, that being once ascertained, effect is given to it accordingly. If the donee of the power intends to execute, and the mode be, in other respects, unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by . . . implication, will make the execution valid and operative." *Blagge* v. *Miles*, 1 Story, 426, 445.

The appellants contend that the will does not disclose an intent on the part of Mrs. Miller to execute this power, and as we understand the brief and arguments, that contention is based upon the following propositions: first, that throughout her will she has referred to the estate and the executor as "my," and so indicates an intent to deal only with such property as she had the legal title to; second, that the will contains no reference to the power as such, or to the subject of it, and was not inoperative without the aid of the power. Two other grounds stated by the appellants are, (1) that the residuary clause cannot be held to be an execution of the power, (2) nor can the pecuniary legacies so operate.

In the much quoted case of *Blagge* v. *Miles*, 1 Story, 426, Judge Story said (p. 446): "Three classes of cases have been held to be sufficient demonstration of an intended execution of a power; (1) Where there has been some reference in the will, or other instrument, to the power; (2) or a reference to the property, which is the subject, on which it is to be executed; (3) or, where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power." In the same connection he said: "All the

authorities agree, that it is not necessary, that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient, that it shall appear by words, acts, or deeds, demonstrating the intention." See also *Hollister* v. *Shaw,* 46 Conn. 248, 252.

It is true that the will does not refer in terms to the power, or specifically to the property which is the subject of the power, and the claim is made that the will was *not* inoperative without the aid of the power. With this last statement we cannot fully concur. It was inoperative without the aid of the power except as to an inconsiderable portion of the property covered by it and the power. As we are now considering the will as and when it was written, our question, first, is whether it was operative *at that time.* This, rather than its operation at her death, is the true test of the intent of the will, and this the appellants concede. "The intent is to be sought at the date of the execution of the will." (Brief, p. 47.) The finding shows that the house stood in her own name at this time, July 14th, 1916, but that she owned no other real estate. She did not know that she owned any personal property and so far as appears she did not. To all intents and purposes the will then so far as its $375,000 of legacies and its residuary clause was concerned, was "ineffectual and a mere nullity." It had nothing to operate on without the aid of the power. At her death she owned $82,-379.57 of personal property, making the legacy clauses slightly over twenty per cent. operative and leaving the residuary clause wholly inoperative. Testing her intent at this date then, we must conclude, if she had her own property in mind, that she intended this meagre payment to her legatees and nothing for her two sisters for whom she purported to provide in the residuary clause. On the other hand, if she intended

the will to operate on the $500,000 of her husband's property, the will when made and when she died was fully operative and effective and the making of ante-mortem gifts of large amounts of property acquired by her after the making of the will, more than $54,400, is rationally explained by the fact that there was already full provision for the operation of her will, and her "acts, words and deeds" in this connection throw strong light on the intent to be found in her will.

We concede the somewhat inconclusive character of a finding that the will is inoperative "to a certain extent," but as a fact in her mind it must be deemed to have had its influence and the will must be read in the light of it to determine the intent in the will. And it has been held that the execution was intended where "some part of the will would otherwise be inoperative." *Bradish* v. *Gibbs,* 3 Johns. Ch. (N. Y.) 523, 551. And in finding the intent to execute, the court may thus compare the amounts of the testator's own property and of the trust fund. *White* v. *Hicks,* 33 N. Y. 383; *Nolan's Trust Estate,* 251 Pa. St. 309, 96 Atl. 714; *Hutton* v. *Benkard,* 92 N. Y. 295, 303.

We attach little significance to the use by Mrs. Miller of the word "my" when referring to the estate or the executor in her will. Her unfamiliarity with business, and particularly with legal distinctions in the ownership of property, may and doubtless does account for her failure to distinguish between property which she legally owned and property which she had the right simply to give away. If she had referred specifically, in an opening clause in her will, to this power, and thereafter used the same word "my," there would of course have been no controlling importance to the word, and it has little significance now. We are in accord in this respect with the opinion in the case of *Hutton* v. *Benkard,* 92 N. Y. 295, 304: "It would not

be unnatural for her, when she came to make a will, to treat this trust property, which she had the same right to dispose of by will to any person whatever, as she had to dispose of her own property, as if it were, in fact, absolutely hers." See also *Funk* v. *Eggleston*, 92 Ill. 515, where "all my estate" carried trust property.

Other points made by the appellants, in brief and argument, bearing upon the question of intent, are not of major importance and cannot affect our conclusion that Mrs. Miller's will discloses an intent to execute the power.

At this point, however, the appellants' claim is put forward that having been made before the death of Mr. Miller, whose will provided the power, Mrs. Miller's will cannot be held to execute the power, and this claim is based upon three propositions: (1) because the donee-to-be cannot be said to have intention to execute a power which is not in existence, unless, of course, his will makes specific reference to the power; (2) because the power as given by the donor is not broad enough to include such an exercise; and (3) because as a matter of law it is impossible.

The appellants' argument under this head fails for want of a correct premise, for, they say, "we cannot consider a mass of extrinsic evidence purporting to explain what her idea was in drawing her will so far ahead of the creation of the power. . . . That the donor might have approved a designation made prior to his death, had he thought of it, is immaterial."

The ground stated in (1) above concedes that if specific reference is made to the power, then the will would operate though the death of the donor of the power had not occurred. This is merely a recognition of the controlling force of the intent, when determined. We have such intent determined in this instance as already indicated, coupled with the direct authority

by word of mouth from the donor of the power for its forthwith execution. Reading both wills in the light of these facts, we find no language to which a present execution of the power would do violence. Thus reaching this conclusion, the further question of the effect of a codicil executed after Mr. Miller's death, becomes of academic interest only. We have heretofore said: "The execution of a codicil, which in terms ratifies and confirms a previous will . . . [has] the same force and effect in law as if it had been rewritten, re-executed, and republished at the date of the codicil." *Lee* v. *Lee,* 88 Conn. 404, 406, 91 Atl. 269; *Giddings* v. *Giddings,* 65 Conn. 149, 160, 32 Atl. 334; *Whiting's Appeal,* 67 Conn. 379, 388, 35 Atl. 268; *Carpenter* v. *Perkins,* 83 Conn. 11, 18, 74 Atl. 1062.

A study of the full and able briefs presented by counsel for all parties, does not leave in our minds any doubt as to the soundness of the conclusions we have reached upon what we consider the controlling features of the case; nor do we find anything in the reasons of appeal not touched upon, which could affect this result.

There is no error.

In this opinion the other judges concurred.