FRANK J. DiSESA, EXECUTOR (ESTATE OF DANIEL F. B. HICKEY) *v.* CARMELA HICKEY ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued November 4, 1970—decided January 13, 1971

*John W. Barnett,* with whom were *Samuel Gruber* and *Basil R. Duncan,* for the appellant (named defendant).

*Daniel G. Donovan,* for the appellee (defendant Marian Harrell).

*William J. Murray,* with whom was *John P. Bigda,* for the appellee (defendant Harold N. Hickey et al.).

*Martin L. Nigro,* for the appellee (defendant DiSesa individually).

*Jack H. Courage,* for the appellee (defendant Manufacturers Hanover Trust Company).

*Henry W. Pascarella,* for the appellee (plaintiff).

*Bernard F. McGovern, Jr.,* assistant attorney general, with whom, on the brief, was *F. Michael Ahern,* assistant attorney general, for the appellee (defendant Robert K. Killian, attorney general).

HOUSE, J.  This was a suit brought by Frank J. DiSesa as executor under the will of Daniel F. B. Hickey to determine the construction of Hickey's will and the validity and effect of the dispositive provisions of a trust indenture which Hickey had entered into during his lifetime.

The basic facts are not in dispute.  Hickey was a graduate of the Yale Law School and between 1911 and 1958 had actively practiced law in Connecticut. He was a trained and experienced lawyer.  His first wife died in 1959, at which time he received a share of a trust which she had established in 1921, and of which Manufacturers Hanover Trust Company was trustee.  Hickey discussed with one of that bank's trust officers arrangements for a trust to be created by him and while the trust agreement was in preparation he married Carmela Sassone in March, 1962. In the preparation of the trust instrument Hickey's attorney was Frank J. DiSesa, who prepared the final version of the trust instrument.  DiSesa was a

member of the Connecticut bar and first became associated with Hickey in 1931. They were warm friends and DiSesa performed many legal and personal services for Hickey.

The trust indenture between Hickey and Manufacturers Hanover Trust Company was executed on March 19, 1962. Under its terms the trustee was to pay monthly income to Hickey in addition to such accrued income as he directed to be paid. He reserved broad powers to direct the administration of the trust and the right at any time to revoke, alter or amend it. Hickey also retained the power to invade the principal of the trust at any time. Although he did not exercise this latter power he did withdraw from the trust substantial amounts of accumulated income, including $9500 during 1966. Article second of the trust provided that on Hickey's death, if the trust had not been sooner terminated, the trustee should distribute the trust property to such person or persons as he appointed by his last will and testament and in default of such appointment then to those persons who would take his personal estate under Connecticut law governing the distribution of intestate personal estate.[1]

In March, 1962, Hickey and his wife moved to Florida but they returned to Connecticut in June, 1964, and thereafter lived in an apartment in Greenwich until Hickey's death on October 22, 1966.

---

[1] "Second: Upon the death of the grantor and upon condition that the trust shall not have been theretofore terminated in the manner provided in Clause Third hereof, the trustee shall transfer, assign and pay over the principal of the trust estate to such person or persons as the grantor may by his last will and testament appoint or in default of such appointment to those persons to whom and in the proportions in which the personal estate of the grantor would be distributed, if he should die intestate, under the law and statutes of the State of Connecticut in force at the death of the grantor, governing the distribution of intestate personal estate."

Starting in November, 1965, Hickey began discussing with DiSesa as his attorney the preparation of a will. At all times both of them were familiar with the provisions of the trust, including its terms providing for a power of appointment and for the disposition of the trust property in default of an exercise of the power of appointment.

On January 20, 1966, Hickey's will was executed in DiSesa's office. The will makes no reference whatsoever to the trust agreement nor to the power of appointment reserved to Hickey in article second of the trust agreement. By its terms the will directed the payment of debts, expenses and taxes, appointed DiSesa to be executor and in article second provided: "I direct that my friend and associate of long standing, my attorney and executor . . . shall receive a total fee as my attorney and executor for administering my estate, an amount equal to fifteen percent (15%) of the gross inventory of my estate." After bequeathing Hickey's jewelry and automobile to Mrs. Hickey, the will in article fourth devised and bequeathed "all of the remainder of my estate, both real and personal, to my said executor, to be distributed nevertheless by him as such executor as follows": (a) one-half to Mrs. Hickey; (b) $5000 to a nephew, Harold Hickey; (c) $10,000 to a nephew Marvin N. Hickey; (d) $10,000 to a niece, Joan; and (e) $25,000 to establish a scholarship fund with The Stamford Scholarship Foundation. Then in article fifth the will provided: "All the rest and residue of my estate, of every kind and description not otherwise disposed of herein, I give, devise and bequeath to my niece, Marian Harrell, of 238 Elizabeth Road, San Antonio, Texas, daughter of my said late sister Jessie Standish to be hers absolutely."

When the will was executed there was between

$743,449.66 and $744,795.57 in the trust estate held by Manufacturers Hanover Trust Company. There was approximately $23,950.71 in personal property, cash and savings accounts owned jointly in survivorship by Hickey with his wife. Hickey then had approximately $28,918.14 in personal property and his own savings and checking accounts. He was seventy-seven years of age when he died, ten months after the execution of the will. At that time the trust assets amounted to $661,364.54, the property owned jointly with his wife amounted to $31,239.08 and his solely owned personal property, savings and checking accounts amounted to $25,920.58. The court's finding offers no explanation for the $82,085 decrease in the size of the trust estate between January 20, 1966, and Hickey's death on October 22, 1966, although the court did find that he "had not transferred or disposed of any substantial amounts of assets between the time of the execution of the will and the date of his death." At the time of his death Mrs. Hickey was his sole heir-at-law and the person who would have taken all of his personal estate under the laws of Connecticut had he died intestate. At no time did Hickey discuss with her the contents of his will or its dispositive provisions nor tell her that she would receive all or any particular amount of his estate. He did tell her that she would have nothing to worry about, that she was to be his "heiress", and that as he was pleased with the way the bank had handled his trust, the bank would take care of her. At no time did he discuss the will with the officer of the bank in charge of the trust.

All parties in interest were made parties to the executor's suit and in addition to claims for a decree construing the will, a decree directing to whom the

trust estate should be paid, and an allowance from the estate to the several parties for their expenses and counsel fees, the plaintiff sought the answers to five specific questions.[2]

The court answered the questions as follows: (a) The value of the jointly-held property should be excluded in making the computations necessary to

[2] "(a) Whether, any portion of the value of the trust assets, or any portion of the value of the jointly owned property, included in the total inventory filed and accepted by said Probate Court, should be excluded in making the computations necessary to determine the amount to be received by Frank J. DiSesa under Article Second of said Will? If so, to what extent should they be excluded in said computations?

"(b) Whether the power of appointment reserved by Daniel F. B. Hickey in Article Second of said inter vivos trust indenture has been exercised by Article Fourth of his Last Will and Testament, so as to require the trustee to pay over the principal of said trust estate to Frank J. DiSesa, as Executor aforesaid to be administered by him in accordance with the provisions of said Will?

"(c) If so, should the portion of Testator's estate passing to Carmela Hickey under Article Fourth, subdivision (a), be computed before setting aside the legacies provided for in subdivisions (b), (c), (d) and (e) of said Article, or should it be computed after the setting aside of said legacies?

"(d) Whether the power of appointment reserved by Daniel F. B. Hickey in Article Second of said inter vivos trust indenture has been exercised by Article Fifth of his Last Will and Testament so as to require the Trustee to pay over the principal of said trust estate, after making the payments provided for in Article Second of said Will, to Marian Harrell, therein named as residuary legatee?

"(e) Whether, in the event it is determined that the power of appointment reserved by Daniel F. B. Hickey in Article Second of said inter vivos trust indenture has not been exercised by his Last Will and Testament, or any Article thereof, the Trustee must nevertheless pay over the corpus of said trust estate, together with the income thereon, to Frank J. DiSesa, Executor aforesaid, to be distributed by him in accordance with the terms of said Will, because the dispositive provisions of Article Second of said inter vivos trust indenture are null and void because the decedent failed to divest himself of complete dominion and control of the trust assets during his lifetime, and because the said dispositive provisions were an attempted testamentary disposition of assets not in compliance with the Statute of Wills."

determine the amount to be received by Frank J. DiSesa under article second of said will, but all other assets, including those held in the trust, should be included. (b) The power of appointment reserved by Daniel F. B. Hickey in article second of the inter vivos trust indenture was exercised by the will as a whole, read in the light of all the surrounding circumstances. (c) The portion of the estate passing to Carmela Hickey under article fourth, subdivision (a) of the will shall be computed and paid over before setting aside the legacies provided for in the subsequent paragraphs of the will. (d) As answered in (b) above. (e) Although the trust indenture reserves extensive powers to the grantor and strongly resembles a custodial agreement, the trust indenture was a valid inter vivos trust without compliance with the execution requirements of the New York or Connecticut statute of wills.

Judgment was entered accordingly, including an allowance from the estate for the expenses of the parties and $10,000 to counsel for DiSesa as executor, $10,000 to counsel for DiSesa in his individual capacity, $6000 to counsel for Manufacturers Hanover Trust Company, $5000 to counsel for Harold Hickey, Marvin Hickey, Joan Standish and The Stamford Scholarship Foundation, $10,000 to counsel for Marian Harrell, and $11,350 to counsel for Carmela Hickey. From that judgment Carmela Hickey has taken this appeal.

Although the appeal raises many questions based on numerous assignments of error, clearly the most important ones concern the question whether the power of appointment reserved by Hickey in the trust indenture was duly exercised by the provisions of his will. Of the remaining assignments of error there are several which relate to matters bearing

more or less directly on this main question and others relate to attacks on the finding and to the admission of certain evidence.

We first consider the question as to whether the power of appointment was exercised by Hickey in his will. Some states have by statute provided that a testator whose will purports to dispose of all of his property shall be held to have exercised any power of appointment which he possessed at the time of his death unless the will expresses or implies an intent to the contrary. See note, 16 A.L.R.3d 911, 920; Restatement, 3 Property § 343. We have no such statute in this state and as this court repeated as recently as 1962 in *Morgan Guaranty Trust Co.* v. *Huntington,* 149 Conn. 331, 344, 179 A.2d 604: "In Connecticut, however, the common-law rule applies . . . . Under this rule, a testator will not be considered as having executed or having intended to execute a testamentary power of appointment unless the will contains 'a reference to the power itself or to the subject of it, [or] unless the intention to execute [the power] is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts . . . that the transaction is not fairly susceptible of any other interpretation.' *Hollister* v. *Shaw,* . . . [46 Conn. 248, 252]; *Union & New Haven Trust Co.* v. *Bartlett,* 99 Conn. 245, 252, 122 A. 105; *Hartford-Connecticut Trust Co.* v. *Thayer,* 105 Conn. 57, 69, 134 A. 155. Our rule appears to be in accord with the modern general rule as stated in an annotation in 127 A.L.R. 248 at 249. See also notes, 91 A.L.R. 433, 94 A.L.R. 26, 173." For a later annotation see 15 A.L.R.3d 346. Paraphrasing and quoting further language from the *Huntington* case, supra, 345: There is nothing in the will suggestive of an intention

to exercise the Manufacturers Hanover Trust Company power of appointment. We can read this will from beginning to end without receiving a suggestion or intimation that the testator had a power of appointment under that trust. The will does not indicate that he even had the power of appointment in mind or that he actually or in fact intended to exercise the power of appointment. "It is not true that every testator wishes to exercise any and all powers of appointment conferred on him. . . . A general residuary clause does express an intention to dispose of a testator's entire estate and avoid any intestacy. *Ministers Benefit Board* v. *Meriden Trust Co.,* 139 Conn. 435, 447, 94 A.2d 917. It does not, however, express an intention to exercise a power of appointment. Such a power operates on property forming no part of the estate of the donee, and therefore his nonexercise of the power cannot result in any intestacy in his estate. *Bankers Trust Co.* v. *Variell,* 143 Conn. 524, 528, 123 A.2d 874. This is one of the reasons for the common-law rule long in effect in Connecticut, as opposed to the contrary rule which Massachusetts has evolved in its case law and New York has adopted by statute. See *Hollister* v. *Shaw,* 46 Conn. 248, 255. Both on principle and authority we consider ours the better rule." *Morgan Guaranty Trust Co.* v. *Huntington,* supra, 346.

We have examined with care the court's finding of fact and are unable to agree that it supports the court's conclusion that the will exercised the power of appointment. As already noted, the will made no mention of the trust, the assets of the trust or the power of appointment. Applying the further test as stated in *Morgan Guaranty Trust Co.* v. *Huntington,* supra, we are unable to conclude that despite this omission the intention to exercise the power was

"manifest" or "so clearly demonstrated by words or acts . . . that the transaction is not fairly susceptible of any other interpretation." An intention is "manifest" when it is "capable of being readily and instantly perceived by the senses"; "capable of being easily understood or recognized at once by the mind"; "obvious." Webster, Third New International Dictionary. As we indicated in *Alling* v. *Levitt,* 112 Conn. 586, 592, 153 A. 166, a fact is manifest when it appears upon the face of a record or is "readily apparent from an examination of authoritative sources of information, but not those the truth of which . . . [has] to be determined by the weighing of evidence or the credibility of witnesses, or the balancing of facts and circumstances or by processes of inference or deduction."

The court found that when the will was prepared both Hickey and DiSesa were familiar with the provisions of the trust including the terms providing for a power of appointment by will and for disposition of the trust property in default of the exercise of the power. Both Hickey and DiSesa were lawyers and we are loath to assume that they did not know or failed to ascertain the long and well-established Connecticut law concerning the testamentary exercise of powers of appointment. See *Sadler* v. *Sadler,* 107 Conn. 409, 413, 414, 140 A. 639. It appears that the will was drafted between November, 1965, and January, 1966,—within four years of the publication of the decision in the *Huntington* case. Hickey had no children and his wife was his sole heir. Accordingly, in default of an exercise of the power of appointment she would take the trust estate. Hickey had told her that she would have nothing to worry about, that she was to be his "heiress," that he was pleased with the way the bank had handled the trust

and that "the bank would take care of her." As his surviving wife Mrs. Hickey was "the natural object of his bounty." *Salvatore* v. *Hayden,* 144 Conn. 437, 441, 133 A.2d 622; *Page* v. *Phelps,* 108 Conn. 572, 585, 143 A. 890.

The appellees place much reliance upon the circumstance that unless the will were construed to be an exercise of the power of appointment there were not sufficient assets in his estate to accomplish in full the objectives of his will providing for specific bequests with a residue to a favored niece. This circumstance is a significant factor in determining whether an intention to exercise a power of appointment is "manifest" or "clearly demonstrated." *Hartford-Connecticut Trust Co.* v. *Thayer,* 105 Conn. 57, 70, 134 A. 155. See note, 15 A.L.R.3d 346; Restatement, 3 Property § 343, comment e. In this connection, however, and in contrast to the situation which existed in the *Thayer* case, Hickey at the time the will was executed had full and complete power to withdraw from the trust any part or all of the principal and had the right to exercise this power right up until the time of his death. He was thus in a position at any time before his death to change the size of the estate which would pass by the terms of his will and thus the ultimate disposition of it by withdrawing from the trust principal which would pass by his will or refraining from such withdrawal and leaving the entire principal to be distributed under the default provisions of the trust.

In short, on the basis of the facts found by the trial court it was not justified in finding an intention on the part of Hickey to exercise the power of appointment which was "manifest" or "so clearly demonstrated by words or acts . . . that the transaction is not fairly susceptible of any other inter-

pretation." " 'The intention to execute the power must be apparent and clear, so that the transaction is not susceptible of any other interpretation, and if it is doubtful under all the circumstances, that doubt will prevent it from being deemed an execution.' " *Union & New Haven Trust Co.* v. *Bartlett,* 99 Conn. 245, 255, 122 A. 105. The court was in error in concluding that the power of appointment was exercised by Hickey's will.

In the light of this conclusion it is unnecessary to discuss all of the appellant's remaining assignments of error and we confine the balance of our opinion to a consideration of the remaining questions of will construction raised by the appeal and questions necessary to its final disposition.

Although they did not file a cross appeal, the appellees filed an assignment of errors in which they claimed that the trial court committed error in reaching the conclusion that "[a]lthough the trust indenture reserves extensive powers to the grantor and strongly resembles a custodial agreement, the trust indenture was a valid inter vivos trust without compliance with the execution requirements of the New York or Connecticut statute of wills." They have fully briefed their contention that the trust created by Hickey was not in fact a valid trust but rather an agreement in the nature of a custodial or agency arrangement so that the assets held by the Manufacturers Hanover Trust Company remained assets of Hickey's estate and as such passed directly by virtue of the dispositive provisions of his will. Such a claim should properly have been raised by a cross appeal. Practice Book § 607; *Peterson* v. *Norwalk,* 150 Conn. 366, 382, 190 A.2d 33. As the appellant properly points out, the procedure followed by the appellees could be prejudicial to an appellant.

Practice Book § 619 requires the trial court to set forth in its finding such facts as may be "necessary to present the questions which the appellant desires reviewed." The court is not expected, much less required, to speculate as to what issues the appellees might also wish to have reviewed incident to the appellant's appeal. Practice Book § 623 permitting the assignment of errors by an appellee is limited to assignments "directed to the finding of any fact or refusal to find any fact." The assignment of error by the appellees here is directed not to a finding of fact but to a conclusion of law. As the appellant further properly asserts, an appellant in such circumstances is not adequately protected by the right to file a reply brief since the finding is designed to present to this court the facts necessary to test the issues raised by the appeal as taken and an appellant in submitting his draft finding cannot be expected to incorporate in that draft finding facts adequate to test the then unknown claims of an appellee. Nor would the appellant in preparing his assignment of errors have the opportunity to contest any improper findings relating to the appellee's then undisclosed claims of error.

Since it appears that despite the procedural defect the appellant in this instance has in no wise been prejudiced and the question has been fully briefed, we have decided to consider the merits of the appellees' claim. We conclude that the powers which Hickey reserved to terminate and to control the investment policy of the trust did not render the trust void as an attempted testamentary disposition. A transfer in trust is not invalid as an attempted testamentary disposition merely because under the terms of the trust the settlor is to receive the income for life and has the power of modification and termina-

tion. *Cherniack* v. *Home National Bank & Trust Co.,* 151 Conn. 367, 369, 198 A.2d 58. Nor do we find that the powers which Hickey reserved to approve the trustee's investment policy negated the existence of a valid trust. See 1 Scott, Trusts (3d Ed.) § 57.2; Restatement (Second), 1 Trusts § 57, and such cases as *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 53 N.E.2d 113; *Kelly* v. *Parker,* 181 Ill. 49, 54 N.E. 615. As Professor Scott observed in the cited section (1 Scott, op. cit., p. 485), "[t]he trend of the modern authorities is to uphold an inter vivos trust no matter how extensive may be the powers over the administration of the trust reserved by the settlor."

It is unquestioned that the trust agreement was duly and legally executed by the settlor and the trustee, that the assets constituting the trust res were delivered to the trustee and the trustee held legal title to them at the time of Hickey's death. Contrary to the contention of the appellees, it is not a condition to the creation of a valid trust that the trust instrument create a vested interest in some ascertained beneficiary. It is sufficient that, as here, the trust instrument provide for a determination of the identity of the ultimate beneficiaries by the exercise of a testamentary power of appointment or in default of an exercise of the power then to such persons as would take from the settlor under the statutes governing the distribution of intestate property. 1 Scott, op. cit. § 56.4; *Loring* v. *Massachusetts Horticultural Society,* 171 Mass. 401, 50 N.E. 936. We find no error in the attacked conclusion of the court that the trust created by Hickey was a valid inter vivos trust.

We next consider the problem of the proper basis upon which the fee to be paid to DiSesa as executor should be computed. The will provided that DiSesa

"shall receive a total fee as my attorney and executor for administering my estate, an amount equal to fifteen percent (15%) of the gross inventory of my estate." The first question asked of the trial court was an inquiry as to how this fee should be computed. The term "gross inventory" is one not used in our General Statutes or case law. As the trial court noted in its memorandum of decision: "Counsel have been unable to furnish the court with a precedent for its guidance in interpreting the language of the will in this regard." It does not appear that the trial court was able to find any guiding precedent and neither have we. The court reached the conclusion that the value of the jointly held property should be excluded in making the directed computation to determine DiSesa's fee, but all other assets, including those held in the trust should be included. In its memorandum of decision the court indicated that it was, "[u]nder all the circumstances . . . adopting" this interpretation. In thus "adopting" an interpretation the court exceeded its powers which were limited to construing the language used. Courts may construe a will but they are powerless to reconstruct one. *Smuda* v. *Smuda,* 153 Conn. 430, 432, 217 A.2d 59; *Bridgeport-City Trust Co.* v. *Buchtenkirk,* 143 Conn. 531, 542, 124 A.2d 231. The term "gross inventory" has no settled meaning in our law and on the record it is impossible to determine what the testator meant by the words. In these circumstances the language of this court in *Nelson* v. *Pomeroy,* 64 Conn. 257, 261, 29 A. 534, is pertinent: "The authorities go far, perhaps dangerously far, in countenancing an elastic exercise of the power vested in the court to make certain an obscure will on the lines of the testator's actual intent; but in every case, as a condition precedent to any exercise

of such power, the law demands that the court shall be satisfied that the will in question, with the circumstances lawfully proven, does in fact disclose the actual intent of the testator. In this case we can only venture an unsatisfactory guess at what possibly the testator might have wished to express, and must therefore hold the clause which contains no clearer meaning void for uncertainty." See *Beardsley* v. *Merry,* 136 Conn. 573, 577, 72 A.2d 829; *Wordin's Appeal,* 64 Conn. 40, 50, 29 A. 238. Under the circumstances the indefinite instruction concerning the computation of fees to be paid to the executor must be disregarded and that fee be computed upon the usual basis of reasonable compensation under the circumstances for the services rendered. *Hayward* v. *Plant,* 98 Conn. 374, 119 A. 341. Of course, in considering the size of the estate as a factor in determining what is reasonable compensation, the fact that the trust res is no part of the estate subject to administration by the executor should be considered by the court in determining the compensation to be paid to him.

The only remaining assignment of error which requires comment concerns the counsel fees and expenses allowed in the present suit. The judgment of the court directed that the assets of the trust estate be turned over to DiSesa as executor of Hickey's will for distribution under the will and made specific allowances for expenses and counsel fees, the fees amounting to $52,350. The allowances were made pursuant to the authority of § 52-251 of the General Statutes.[3] Because the court had errone-

---

[3] "Sec. 52-251. EXPENSES AND COUNSEL FEES IN ACTION TO CONSTRUE WILL OR FOR ADVICE CONCERNING WILL. In any action brought to a court of equitable jurisdiction for the construction of a will or for the advice of the court as to the administration of an estate or trust under a will or trust instrument, by any person acting in a

ously concluded that the trust estate passed under the will by virtue of an exercise of Hickey's reserved power of testamentary appointment it had no reason to allocate the fees between the testamentary estate and the trust estate. Since under its decision the trust assets passed by direction of the will, the present suit having been brought "for the construction of a will" by the executor who was a person acting in a fiduciary capacity "thereunder," it properly considered the testamentary estate as "such estate" as that term is used in § 52-251. We have concluded, however, that the power of appointment was in fact not exercised by Hickey's will but, rather, that the trust estate passed by the default provisions of the trust agreement. Accordingly, the trust assets did not become a part of "such estate" as was subject to administration under the provisions of the will which the fiduciary sought to have construed. Were it not for the pleading filed by the trustee in answer to the executor's complaint we would be constrained to hold that § 52-251 did not authorize any allowance to counsel from a source other than the estate passing under the provisions of Hickey's will. In its "Answer and Claim" filed in response to the executor's complaint, however, Manufacturers Hanover Trust Company expressly claimed "that it is entitled to a decree . . . setting forth the person or persons to whom the principal and income of the Trust . . . should be distributed and the respective shares thereof to which such person or persons are entitled." We conclude that this affirmative plea for advice as to distribution of the trust by the trust

---

fiduciary capacity thereunder, there shall be allowed to each of the parties to such proceeding such reasonable sum for expenses and counsel fees as such court, in its discretion, deems equitable; which allowance shall be taxed as costs in the cause, to be paid out of such estate."

company acting in a fiduciary capacity "thereunder" suffices to render the trust estate subject to the statutory allowances authorized by § 52-251 "to be paid out of such estate." Because the judgment did not distinguish between the two estates in making its allowances for expenses and counsel fees, a further hearing will be necessary to determine what allowances from each are equitable under the circumstances. Since the allowances must be allocated and on rehearing may be changed in amount we do not now decide on the merits of the appellant's claim that the court erroneously concluded that as made they were reasonable.

In summary and specific answer to the questions propounded: (a) The portion of article second of the will providing a formula for computing the amount to be received by DiSesa for services as executor and attorney is void for uncertainty. The amount of his fee should be fixed in a reasonable amount considering the factors mentioned in *Hayward* v. *Plant,* supra, 384, as well as the circumstance that the trust assets and jointly owned property are not portions of Hickey's estate passing by his will and subject to administration by the executor. (b) The power of appointment reserved by Hickey in article second of the trust indenture was not exercised in his will. (c) The portion of the estate passing to Carmela Hickey under article fourth, subdivision (a) of the will is to be computed and paid over before setting aside the legacies provided for in the subsequent paragraphs of the will. (d) As answered in (b) supra. (e) In accordance with the provisions of article second of the trust indenture and because Hickey did not exercise his reserved power of appointment, the trustee should assign and pay over the trust estate to Carmela

Hickey, as she is the person to whom Hickey's entire personal estate would have been distributed under the Connecticut statutes in force at the time of his death if he had died intestate.

There is error in the court's answers to the questions propounded and in the allowance for expenses and counsel fees. The judgment is set aside and the case is remanded for further proceedings and thereafter for judgment in accordance with this opinion.

In this opinion the other judges concurred.