OPINION OF THE COURT
Kristin Booth Glen, S.
This is a contested proceeding by Bank of America, N.A., as trustee, for advice and direction regarding the distribution of the remainder of three inter vivos trusts created by Mary R. Chappell. The trustee asks the court to determine whether the powers of appointment granted in each of the trusts to the settlor’s granddaughter, Mary Chappell Wheat, were validly exercised, and whether the trusts’ assets are subject to claims of the granddaughter’s creditors. Threshold questions presented here as to whether New York or Connecticut law controls raise *706 important issues of conflict of laws rules as they apply in the trusts and estates context.
The settlor created three irrevocable trusts, one dated April 7, 1932 (the 1932 trust), and two dated December 27, 1935 (respectively, the 1935 William Chappell trust and the 1935 Mary Chappell Wheat trust). Although the settlor was domiciled in Connecticut, the assets of all the trusts consist of intangible personal property located in New York and each of the trusts has a New York trustee. All of the instruments state they shall be “construed and regulated by the laws of the State of New York.” The settlor died in 1949.
Using nearly identical terms, each of the trusts granted a power of appointment to Mary Chappell Wheat (then known and named in the trust instruments as Mary Chappell). In the 1932 trust and also in the 1935 William Chappell trust, she was given a lifetime income interest following that of her father, William Chappell. Upon her death, the trustee is directed “to pay over the principal of said trust estate to such persons as the said MARY CHAPPELL [WHEAT] shall appoint by Will or by Instrument of Appointment executed like a Will and dated after the date of the death of said WILLIAM R. CHAPPELL.”[1] In the 1935 Mary Chappell Wheat trust, the trustee is directed upon the death of Mary Chappell Wheat “[to] transfer and pay over the principal of such trust fund to such person or persons as she shall appoint by her Will or by an instrument of appointment executed like a Will.”[2]
Mary Chappell Wheat died in 2007, also domiciled in Connecticut. She left a 2006 will which gives her residuary estate in equal shares to her son, daughter, and two grandsons. The will does not expressly refer to the powers of appointment. She also left a handwritten note dated October 22, 2002 which states, “I am leaving all 3 trusts to my husband Clayton E. Wheat.” The note is signed “Mary C. Wheat” and “subscribed and sworn to” before a Connecticut notary public whose signature and stamp are affixed.
I. Application of New York Law
Turning first to the threshold choice of law issue, it is clear that New York will recognize the settlor’s direction to apply *707 New York law to determine issues regarding the trusts. The Court of Appeals considered an analogous case in Shannon v Irving Trust Co. (275 NY 95 [1937]), involving a trust created by a New Jersey domiciliary, the assets of which were held and administered in New York by a New York trustee. The instrument called for the application of New Jersey law for all questions except those relating to the trustee’s commissions, as to which New York law was to apply. Honoring these instructions, the Court stated, “[t]he instrument should be construed and a determination of its validity made according to the law chosen by the settlor.”[3] (275 NY 95, 102 [1937]; see also In re Ash’s Trust, 111 NYS2d 115 [Sup Ct, NY County 1952] [trust created by New Jersey domiciliary with New York trustee and assets in New York to be governed by New York law where trust indenture so directed].)[4] It is therefore necessary to begin with an examination of New York law.
A. New York Estates, Powers and Trusts Law
New York’s Estates, Powers and Trusts Law generally applies only to those trusts created by persons living on or born after its effective date, September 1, 1967, but it also applies to “instruments making dispositions or appointments” of a person living on the law’s effective date, as was Mary Chappell Wheat (EPTL 1-1.5). Therefore, the EPTL governs the question of whether the appointive property is subject to the claims of the creditors of Mary Chappell Wheat (see also Matter of McMurtry, 68 Misc 2d 553 [1971] [EPTL governed power granted under will of decedent who died in 1915, exercisable by will of donee who died in 1969]).
B. Classification of Powers
Interpretation of the applicable EPTL provision requires classification of the powers as either “general” or “special,” and as either “presently exercisable,” “postponed,” or “testamentary.” The Chappell powers are clearly “general” powers, defined in EPTL 10-3.2 (b) as those “exercisable wholly in favor of the donee, his estate, his creditors or the creditors of his estate.” They are also “postponed” powers. A power is “postponed” if it *708 is “exercisable by the donee only after the expiration of a stated time or after the occurrence or nonoccurrence of a specified event” (EPTL 10-3.3 [d]).[5] The powers under the 1932 trust and under the 1935 William Chappell trust were exercisable only if the donee survived her father, and her power over the 1935 Mary Chappell Wheat trust could only be exercised after she reached age 18. These conditions render the powers “postponed.”[6]
II. Assets Subject to Creditors
EPTL 10-7.2 provides: “Property covered by a general power of appointment . . . which is presently exercisable, or of a postponed power which has become exercisable, is subject to payment of the claims of creditors of the donee, his estate and the expenses of administering his estate.”
This section was derived from Real Property Law former §§ 139 and 141, which also provided that trust property covered by a presently exercisable power, or a postponed power which has become exercisable, is subject to the donee’s creditors’ claims. Those sections, enacted in 1964, largely represented á continuation of the law of this state in effect since 1830 (3d Rep of Temp St Commn on Estates, 1964 NY Legis Doc No. 19, Comment, at 477). Accordingly, the result is the same whether we apply the law in effect in 1932 and 1935, when the trusts were created, or today, under the EPTL: the creditors of Mary Chappell Wheat can reach the appointive property.
The respondents son and daughter of Mary Chappell Wheat rely on an 1881 Court of Appeals decision, Cutting v Cutting (86 NY 522 [1881]), for the proposition that the law in effect when the trusts were created abrogated the common-law rule of subjecting property covered by a general power of appointment to the claims of creditors. Cutting limited the rights of a donee’s creditors where the property in question was covered by a general testamentary power of appointment coupled with a legal life estate. Cutting is distinguishable because the life tenant did not have a lifetime power to appoint, as did Mrs. Wheat. Fur *709 ther, the legislature rejected the rule in Cutting with the enactment of the Real Property Law, which was expressly made applicable to all powers of appointment whether created before or after its effective date (L 1964, ch 864, § 167).[7] Accordingly, the court finds that the appointive property is subject to the claims of the creditors of Mary Chappell Wheat.
III. Choice of Law Rules and the Validity of the Exercise of the Powers
Turning to the question of the validity of the exercise of the powers, New York law is applied again for the reasons discussed above. Assuming for the moment that application of New York law includes reference to its internal choice of law, it is clear that Connecticut law would apply.
The EPTL addresses choice of law in the case of a presently exercisable general power of appointment, requiring application of the law of the domicile of the donee (in this case, Connecticut) (EPTL 3-5.1 [gj [1]), but does not provide a rule for exercise of a postponed general power. In the absence of a statutory choice, it is necessary to look to the common law, under which the law of the domicile of the donor controls (Matter of Deane, 4 NY2d 326 [1958]; Matter of New York Life Ins. & Trust Co., 209 NY 585 [1913]). As stated in Matter of Deane (supra), the common-law rule “is based on the fact or theory that the property being disposed of is that of the donor of the power, not the donee” (4 NY2d at 331).
Applying this analysis produces something of an anomaly, since the legislature determined to depart from the common law in its treatment of presently exercisable general powers, recognizing that the donee of such a power is virtually the owner of the appointive property and “not merely a conduit of title” (Revisers’ Notes, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-5.1, at 566; see also Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 3-5.1, at 570-571). The policy underlying this departure applies equally to postponed powers that are exercised after the occurrence of the postponing events. It is unclear whether the omission to provide a choice of law rule in the statute for postponed powers was a *710 legislative oversight. It is not necessary to consider the question further, however, since the domicile of the donor and donee of the powers is identical in this case.
The question remains as to whether the settlor’s direction that the trusts be “construed and regulated by the law of the State of New York” requires application only of New York’s internal law, or whether the settlor’s direction invokes New York’s choice of law rules as well, under the principle of “renvoi.”
New York rejected the doctrine of renvoi in a number of early cases (e.g. Lann v United Steel Works Corp., 166 Misc 465 [Sup Ct, Kings County 1938]; Matter of Chadwick, 109 Misc 696 [Sur Ct, NY County 1919]), but the present state of the law requires a more complex analysis to resolve the choice of law issue. In a comprehensive discussion of the subject, Surrogate Midonick observed in Matter of Renard (108 Misc 2d 31 [Sur Ct, NY County 1981], affd 85 AD2d 501 [1st Dept 1981], affd 56 NY2d 973 [1982]),
“[T]he Court of Appeals has moved away from mechanical choice of law rules to a balancing approach which requires the identification of the underlying policies in the conflicting laws of the relevant jurisdictions, and the examination of the contacts of those jurisdictions to see which has a superior connection with the occurrence and thus a superior interest in having its policy or law followed” (108 Mise 2d at 39 [citing cases]).
Renard distinguishes an earlier Court of Appeals case, Matter of Clark (21 NY2d 478 [1968]), on its facts, but quotes with approval its adoption of a “paramount interest” test: “As between two states, the law of that one which has the predominant, if not the sole, interest in the protection and regulation of the rights of the person or persons involved should, of course, be invoked” (Matter of Renard at 39, quoting Matter of Clark at 485-486). Renard thus appears to have imported the “paramount interest” test adopted for tort actions in Tooker v Lopez (24 NY2d 569 [1969]) into the trusts and estates field.
Applying this paramount interest test to the present case, Connecticut prevails. The only relationship to New York here is that the trustee has a place of business in New York and apparently manages the assets from the New York office. These contacts carry little weight in the balance, particularly since the trustee is a national association with offices throughout the *711 United States, the assets are intangible, and the trust has terminated. Additionally, no New York policies are at stake.[8] On the other hand, both the donor and the donee were domiciled in Connecticut and all potential beneficiaries and creditors are domiciled in Connecticut, with the exception of one party who resides in Hawaii. The documents central to the decision here, Mary Chappell Wheat’s handwritten note and her will, were both executed in Connecticut, and the will was prepared by a Connecticut attorney.
A. The Handwritten Note
Under Connecticut law, as in New York, a will must be witnessed by at least two individuals.[9] Mary Chappell Wheat’s notarized note had only one witness and therefore did not constitute an “instrument of appointment executed like a will” as required by the trust instruments. The note was ineffective to exercise the powers.[10]
B. The Residuary Clause of the Will
Neither were the powers exercised by Mrs. Wheat’s will. Unlike in New York,[11] the law in Connecticut generally does not treat a testamentary residuary clause as exercising a power of appointment. The Supreme Court of Connecticut explained in DiSesa v Hickey (160 Conn 250, 278 A2d 785 [1971]) that Connecticut follows the common-law rule under which *712 As stated above, the will here contained no reference to the powers.
*711 “a testator will not be considered as having executed or having intended to execute a testamentary power of appointment unless the will contains ‘a reference to the power itself or to the subject of it, [or] unless the intention to execute [the power] is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts . . . that the *712 transaction is not fairly susceptible of any other interpretation’ ” (160 Conn at 258, 278 A2d at 790, quoting Morgan Guar. Trust Co. of N.Y. v Huntington, 149 Conn 331, 334, 179 A2d 604, 612 [1962]).
The guardian ad litem appointed for the infant residuary beneficiaries of Mrs. Wheat’s will argues that the powers were exercised by the residuary clause because her intention to exercise the powers is manifest from the circumstances. He cites his interview with the drafter, who stated that decedent executed a new will in 2006 for the specific purpose of adding her grandchildren as beneficiaries, and also because she wanted to keep her assets out of the reach of her husband’s creditors. He also argues that the will would be inoperative if not for its exercise of the powers, since her residuary estate has no assets. This argument is unpersuasive, and the circumstances here could as easily point to the opposite conclusion.
Mary Chappell Wheat had two prior wills, both of which expressly exercised her powers. Reference to the trusts in those wills and in the 2002 note is inconsistent with a presumption that failure to mention them in her last will exhibits an intent to exercise her powers. Further, other provisions in the will were operative — namely, certain preresiduary bequests and burial instructions — and there is no evidence that she had no other assets and no expectation of other assets when she executed her last will. This is insufficient for a finding of manifest intent to exercise the powers as required by the rule in DiSesa, where the court said,
“[A] fact is manifest when it appears upon the face of a record or is ‘readily apparent from an examination of authoritative sources of information, but not those the truth of which . . . [has] to be determined by the weighing of evidence, or the credibility of witnesses, or the balancing of facts and circumstances or by processes of inference or deduction’ ” (160 Conn at 260, 278 A2d at 791, quoting Alling v Levitt, 112 Conn 586, 592, 153 A 166, 168 [1931]).
IV Conclusion
Accordingly, the remainder of each of the trusts is payable pursuant to the default provisions of each trust: under the 1932 trust, to the persons who would take in intestacy from Mary Chappell Wheat under New York law, i.e., the first $50,000 and *713 one half the balance to the estate of her post-deceased husband, Clayton E. Wheat, Jr., and the balance, in equal shares to her two children, Clayton C.C. Wheat and Jennifer C. Wheat; under the 1935 William R. Chappell trust, to the persons who would take in intestacy from William R. Chappell under New York law, i.e., in equal shares to Clayton C.C. Wheat and Jennifer C. Wheat; and under the 1935 Mary Chappell Wheat trust, to her issue, i.e., Jennifer C. Wheat and Clayton C.C. Wheat, in equal shares.[12]

. The grant of these powers was conditioned upon Mary Chappell Wheat surviving her father, which she did.

. The grant of this power was conditioned upon Mary Chappell Wheat attaining age 18. She was over 18 at all times when the power arguably may have been exercised.

. The decision notes an exception for instructions contrary to public policy, not an issue in the present case.

. These cases were decided under former Personal Property Law § 12-a (L 1930, ch 849, as amended by L 1933, ch 573), from which current EPTL 7-1.10 was derived without significant change.

. A “presently exercisable power” is one that “may be exercised by the donee, during his lifetime or by his written will, at any time after its creation, and does not include a postponed power” (EPTL 10-3.3 [b] [emphasis added]). A “testamentary power” is one that is “exercisable only by a written will of the donee” (EPTL 10-3.3 [c] [emphasis added]).

. Although the occurrence of these events would transform postponed powers to presently exercisable powers under the Restatement (Restatement [Third] of Property [Tent Draft No. 5] § 17.4 [c]), our legislature has chosen a different path.

. The Cutting decision was criticized by the Temporary State Commission on the Modernization, Revision and Simplification of the Law of Estates in its Third Report (1964), saying the decision “unfortunately” had “scuttled the statutory scheme” and that the new statute would “free our statutory law from the frustrations read into it by Cutting v. Cutting” (1964 NY Legis Doc No. 19, Comment, at 477).

. Conflict of laws cases in the Court of Appeals where the nature of the forum’s interest was a factor have concerned strong public policies or the protection of the forum’s citizens (e.g. Matter of Clark, supra [concerning right of election available to widow in foreign state, but not under New York law as then in effect]; Matter of Renard, supra [balancing French law of forced heirship against New York policy of testamentary freedom]; Tooker v Lopez, supra [reviewing effect of foreign state “guest statutes” prohibiting suit by a guest passenger against a negligent driver]).

. Conn Gen Stat Ann § 45a-251.

. The result would be different under New York law. {See EPTL 10-6.1, 10-6.2, 10-6.3.)

. See EPTL 10-6.1 (a).

. See EPTL 2-1.2 (a).